## MARGARET KNIFFEN *v.* ALFRED McCONNELL.

Where it was proved, in an action to recover damages for a breach of promise of marriage, that the uncle and aunt of the plaintiff, in her presence, and without objection on her part, asked the defendant to marry her, which he refused, and when the plaintiff said to the defendant: " M., I don't want your money; I want your word and honor that you promised me," he replied: " There is no use in talking; I can't marry you now." *Held*, that there was evidence enough, on the subject of a request, to submit that question to the jury.

In an action for breach of promise of marriage, evidence as to the defendant's pecuniary circumstances should be confined to general reputation. To that extent it is admissible.

Where the answer, in such an action, contains only a denial of the promise, evidence showing acts of improper and lewd conduct on the part of the plaintiff, for the purpose of proving criminal intercourse with other men, after the making of the promise, is not admissible, as a bar to the action, for the reason that that defense is not set up in the answer.

Such evidence may be received, however, in mitigation of damages, *it seems*.

It is not erroneous for the judge to charge the jury that if they find the defendant seduced the plaintiff under a promise of marriage it aggravates the damages.

Where the plaintiff proved: 1st. The promise, as admitted by the defendant in his acts and conversation. 2d. The pregnancy of the plaintiff, and subsequent birth of a child. 3d. The application to the defendant to marry her, on account of her condition, and his refusal. 4th. The appeal of the plaintiff to him that she did not want his money, but wanted his word and honor that he had promised her. *Held*, that this evidence was amply sufficient to submit to the jury the question whether the defendant had seduced the plaintiff, and if so, whether he had promised marriage, to carry out his intentions, or had taken advantage of the confidence arising from that promise to effect his purpose.

It is not erroneous to charge that if the defendant has come into court and attempted to prove the plaintiff guilty of misconduct with other men, of which he knew she was innocent, or when the misconduct was committed with himself, it aggravates the injury and strengthens the claim to damages, although such misconduct is not set up in the answer as a defense.

Where the judge charged that if the jury were satisfied that the defendant was not the father of the plaintiff's child, they should find for the defendant; *Held*, that there was some ground for criticism on this part of the charge; that the pregnancy being a conceded fact, it was not for the defendant to prove that he was not the father, but for the plaintiff to prove that he was.

THIS was an action to recover damages for breach of a promise of marriage. The complaint contained a promise of marriage, made by the defendant to the plaintiff, to marry her when he should be thereafter requested; averring a request to marry and the defendant's refusal. It also contained a second allegation on a promise to marry the plaintiff within a reasonable time, a request by the plaintiff and a refusal to marry her, although a reasonable time had elapsed. The answer was a general denial of everything in the complaint.

Upon the trial, it appeared the defendant commenced paying attentions to the plaintiff in 1852, and continued his attentions till Sept., 1855. During that time, he went with the plaintiff to parties, balls and elsewhere; would spend his evenings with her, ride out on Sundays, and on his return stay till midnight. On one occasion, when the plaintiff was sick, the defendant visited her two or three times a week, and would fan her, staying from half an hour to two or three hours. On one occasion, when visiting her, he was told by a relative of the plaintiff they were old enough to get married, or to break up keeping company. To which he replied, he was not fooling about the matter. In April, 1855, on a visit he made to the plaintiff, the defendant was charged by her aunt with causing her condition—she being then pregnant—and asked what he was going to do about the matter. He denied being the father of the child. The plaintiff said no other man had ever had any connection with her. He was asked to marry her. He replied, he was not in a condition to marry then. He afterwards said she had proved herself to be treacherous, and he could not marry her. The plaintiff was about twenty-six years of age and the defendant forty. It was proved she had invited other young men in her room, and had gone to parties with them. Other evidence was given as to their riding together; and a sister of the plaintiff proved that the defendant told her they were engaged.

Upon the trial, the judge permitted the plaintiff to prove

what the defendant was worth. This was objected to by the defendant, and the objection overruled upon the ground that the evidence was admissible to show the extent of the damage the plaintiff had sustained by the defendant's refusal to marry her. To this the defendant excepted.

When the plaintiff rested, the defendant's counsel moved for a dismissal of the complaint on the ground that there was no evidence of a sufficient request to marry on the part of the plaintiff. The motion was denied, and the defendant excepted.

The defendant offered to prove that the plaintiff was on one occasion in a private bedroom with some young men and they shut themselves in and remained for some time; and also acts of a lascivious character, showing that she had prostituted her person to others, after the alleged promise of marriage. This was excluded, on the ground that no such defence was set up in the answer; to which the defendant excepted. The same evidence was afterwards offered and admitted in mitigation of damages. It was proved that in September 1855, the plaintiff spent the night at a tavern with a young man other than the defendant, and that they lodged together; and a similar occurrence in July or August, 1854. Some evidence was given to impeach the testimony of these witnesses.

The judge, among other things, charged the jury that if they found the defendant had seduced the plaintiff under a promise of marriage, it aggravated the injury, and they might regard such seduction as an aggravation of damages. That if the defendant had attempted to prove her guilty of misconduct with other men of which he knew she was not guilty, or when the misconduct was committed by himself, it aggravated the damages.

The defendant's counsel asked the judge to charge that unless the jury were fully satisfied that there was a contract of marriage between the parties at the time the defendant was requested to marry the plaintiff, and that the defendant was the father of the child with which she was

pregnant, the jury must find for the defendant. This was refused, but the judge did instruct the jury that if they were satisfied the defendant was not the father of the plaintiff's child, or that the defendant had any reasonable ground so to believe at the time of his refusal to marry her, then they should find for the defendant.

To these various points of the charge, and to the refusal to charge, the defendant duly excepted. The jury found a verdict in favor of the plaintiff for the sum of $2,350, and the plaintiff remitted to the defendant the sum of $350, and prayed judgment for the residue of the verdict and damages, being the sum of $2,000 demanded in the complaint; and for the latter sum, with costs, judgment was entered. The general term affirmed an order of the special term denying a motion for a new trial, and judgment was entered on the verdict, for the plaintiff.

*D. J. Sunderlin*, for the defendant.

*F. Kernan*, for the plaintiff.

INGRAHAM, J. There was sufficient evidence of a request on the part of the plaintiff to marry, to warrant the denial of the motion to dismiss the complaint. The uncle and aunt, in her presence, and without objection on her part, asked the defendant to marry her on account of her condition, which he refused; and when the plaintiff said to him, "McConnell I don't want your money; I want your word and honor that you promised me," he replied, "There is no use in talking, I can't marry you now," there was evidence enough on the subject of a request to submit that question to the jury.

The defendant objected to evidence as to his pecuniary circumstances. The ground upon which this was admitted, was to show the full extent of the loss or damage the plaintiff had sustained by reason of the defendant's refusing to fulfill his engagement. By this, I suppose, it was

intended to show that from the plaintiff's pecuniary condition, she would have been in the enjoyment of comfortable circumstances, and placed in the use of means, which by his refusal, she has been deprived of. It is now settled that in action for breach of contract, evidence of the condition of the defendant as to means is not admissible. And in other actions, a similar ruling has been adopted when the evidence was offered to increase the damages. Thus in *Myers* v. *Malcom* (6 Hill, 292), this evidence was held improper in an action for damages, from an explosion of gunpowder improperly stored. And in *Dain* v. *Wycoff* (3 Selden, 191), GARDINER, J. in an action for damages for seduction, says: "If the defendant can not show his poverty in mitigation of damages, there is no reason why the plaintiff should aggravate them by proof of his wealth." In *James* v. *Biddington* (6 Car. and P. 589), such evidence was held inadmissible in actions for criminal conversation. But in the latter case it is said this rule does not apply in action for breach of promise of marriage, where the amount of the defendant's property is material as going to show what should have been the station of the plaintiff in society if the promise had not been broken. (Sedg. on Dam. p. 544.) His means might have relieved her from labor, or placed her in a condition of comfort and independence which she would not have otherwise enjoyed. The objection in this case was not to the mode of proof, but to the admissibility of that kind of evidence. It may be objectionable to particularize the defendant's property, and such evidence should be confined to general reputation as to the circumstances of the defendant. To that extent I think it admissible.

The defendant offered evidence showing acts of improper and lewd conduct on the part of the plaintiff, for the purpose of proving criminal intercourse with other men. This was excluded by the court, for the reason that the same was not set up in the answer. There was no error in this ruling. The alleged improprieties had taken place after

the promise of marriage had been made. They did not show the contract to be void from its commencement, but they showed acts which relieved the defendant from an obligation of performance, and which constituted a defense to the original cause of action. The code, section 149, requires an answer to contain either, 1. Denials of the plaintiff's allegations; or, 2. A statement of any new matter constituting a defense or counter-claim. The wording of this section is imperative. The answer *must contain* such statements. In this case the answer only contained a denial of the promise. It gave no information of any new defense, or any new matter occurring after the contract, that formed a defense. No issue was formed as to such a defense. In *McKyring* v. *Bull* (16 N. Y. 297), the effect of this section was held to be such as to require all matter, if it constituted a defense, to be pleaded. (See also *Wright* v. *Delafield*, 25 N. Y. R. 270.) While, however, this was not admissible as a bar to the action, the defendant offered and the court received it in mitigation of damages, and the defendant received the full benefit of it, as much as he would have done if received on the first offer. In addition to the admission, the judge gave the defendant the full benefit of the evidence as a defense when he told the jury if the defendant was not the father of the plaintiff's child, or had any reasonable ground so to believe at the time of his refusal to marry her, they should find for the defendant.

The judge also charged that if they found the defendant had seduced the plaintiff, under a promise of marriage, it aggravated the damages. I do not understand the objection to this ruling to be to its correctness as a rule of law, but that it was not warranted by the evidence, and that the judge submitted to the jury a proposition not sustained by the evidence, and not in the case. The propriety of the rule was fully examined by MASON, J., in *Wells* v. *Padgett* (8 Barb. 323), and cases cited by him from Massachusetts, Mississippi, Tennessee, Kentucky and Indiana, approving that rule. The only case cited to the contrary is from

Pennsylvania, but the propriety of that decision has been since questioned. The weight of authority and the general principles upon which such evidence has been admitted, are strongly in favor of sustaining the rule.

Was there then evidence enough in the case to warrant the finding of the jury on that point. There was proved: 1st. The promise as admitted by the defendant in his acts and conversation. 2d. The pregnancy of the plaintiff, and subsequent birth of the child. 3d. The application to him to marry the plaintiff, on account of her condition, and his refusal. 4th. The appeal of the plaintiff to him that she did not want his money, but wanted his word and honor that he had promised her. These and other portions of evidence bearing upon this question were amply sufficient to submit to the jury the question whether he had seduced the girl, and if so, whether he had promised marriage to carry out his intentions, or had taken advantage of the confidence arising from that promise to effect that purpose. There is no room for the objection that there was not enough evidence on which that question could be submitted to the jury.

The judge also charged that " if the defendant had come into court and attempted to prove her guilty of misconduct with other men, of which he knew she was not guilty, or when the misconduct was committed with himself, it aggravates the injury and aggravates the claim to damages." In *Southard* v. *Rexford* (6 Cowen, 254), it was held that an attempt to justify the breach of promise of marriage by stating upon the record, as the cause of desertion of the plaintiff, that she had repeatedly had criminal intercourse with various persons, and fails entirely in proving it, is a circumstance which ought to aggravate damages. The reason given by the learned judge in that case is that a verdict for nominal damages under such circumstances would be fatal to the plaintiff. The rule is undoubtedly founded upon the fact that the justification is placed upon the record, and that it will ever remain there

as a reiteration of the charge against the plaintiff, and with such an answer on the record, a trifling verdict would not show that such charge was unfounded. The same rule applies to actions for libel and slander; but I have not seen any case where the rule has been extended beyond a justification upon the record. The defendant certainly did prove improprieties on the part of the plaintiff, after the promise was made, not perhaps as to the prostitution, for those witnesses were discredited, to some extent, and may have been disbelieved by the jury. The attempt to submit such conduct to the jury, when the same is not made a part of the record, does not in my judgment warrant the charge of the judge in the present case. Such a rule would deprive a party of a right to submit any thing in mitigation of damages, as connected with the plaintiff's conduct, without assuming the liability of having the damages increased if he fails in establishing the truth of them.

It is an anomaly in an action for a breach of contract, to hold that setting up matters to excuse such breach, in an answer, the proof of which fails, is an aggravation of damages. Certainly the rule should be extended no further than the case of *Southard v. Rexford* has carried it; and where it is not made a part of the record and set up by way of justification, there is no good reason for the rule as laid down upon the trial. It has been held that to prove the bad character of the plaintiff in such an action, the representations of character made by third persons may be given in evidence without proving their truth. (*Foulkes* v. *Solway*, 3 Esp. Rep. 236.) If the rule, as laid down at the circuit, be correct, then such proof would only be an aggravation of the damages. I think there was error in this part of the charge, and that the rule should have been confined to the justification set up on the record.

There is also some ground for criticism in the remaining part of the charge objected to by the defendant, viz: That if the jury were satisfied that the defendant was not the father of the child they should find for the defendant.

The pregnancy was a conceded fact. It was not for the defendant to prove that he was not the father, but for the plaintiff to prove that he was, if she wished to relieve herself from the effect of the admitted pregnancy. The instruction to the jury might very easily lead them to suppose that unless it was proved the defendant was not the father, they might suppose him to be the father, and punish him accordingly.

For the cause above stated as to the charge that the attempt to prove facts imputing want of chastity to the plaintiff, which failed, was an aggravation, I think a new trial should be ordered; but a majority of the court are of the opinion that the charge was not erroneous in this respect, and that attempting to give such matters in evidence, though not set up in the answer as a defense, if not made out, warrants the charge to the jury that it should aggravate the damages.

The judgment, therefore, must be affirmed.

MULLIN, J., concurred with INGRAHAM, J., upon the last point. All the other judges being for affirmance, judgment affirmed.